UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

FILED
MAY 16 2025
US DISTRICT COURT
DISTRICT OF DELAWARE

DONALD PARKELL, JOHN COX and the inmates at SUSSEX CORRECTIONAL INSTITUTION,

Plaintiffs,

v.   25-621

OFFICER TATE, WARDEN CERESINI, CHAPLAIN RUSSELL and STAN TAYLOR,

Defendants.

## CIVIL COMPLAINT FOR MONEY DAMAGES

1. This is a class action complaint raised on behalf of the inmates at Sussex Correctional Institution (S.C.I.), a Delaware level 5 facility that is located in Georgetown, Delaware.

2. This action has only two named plaintiffs. This is due to the class proposed nature of the caption.

3. The two named representative plaintiffs are Donald Parkell (P1) and John Cox (P2). These 2 individuals arrive at the junction of Federal Complaint due to the commonalities of a singular event.

1

## BACKGROUND

4. P1 and P2 independently sought out the religion they ascribe to. Neither had met the other, or knew any information about the other.

5. P1 has an extensive history in this court and the 3rd Circuit. This is not similar for P2, who has no prior litigation in civil court.

6. P1 has followed this religion since about 2004. P2 has followed this religion since 2021.

7. The reason that two individuals arrived at the same religion without ever meeting is not uncommon, given the major 3 religions and common proselyting. However, the religion P1 espouses was described by this Honorable Court as "novel".

8. How 2 men completely indepent from each other can arrive at the same ideology in a "novel" religion is actually not such a stretch. In fact, it is the 2 representative plaintiff's

2

view that it is inevitable if one is guided by the same foundational scaffolding. These primary inquisitions are: first use reason, logic and common sense. If it is unreasonable, illogical, or ridiculous, then it is discarded out of hand. That does not mean to be stubborn, as the truly metaphysical is seen as supernatural at first, and science is always first disregarded as magic before it is accepted. Secondly, search and find the duality in everything, including theology.

9. It is a natural conclusion that when one begins this journey, sets those parameters, that one would arrive at a jewish mysticism (Kabbalah) with magical practices (wicca); also found throughout Leviticus, the Torah, and Old Testament generally, and to discard the Middle Eastern patriarchal religious dominance, in favor of parental creationism.

10. In Parkell v. Senato, Pl explained his religion extensively (Parkell v. Senato 14-446-LPS).

3

11. As the DDOC was the defendants there (in Senato, i.d.) it goes without saying that this religion is not a novel one any longer, at least, not to the DDOC. That case was an extensively litigated and contested quite diligently, despite having no constitutional legs to stand on. The DDOC simply contended that they understood their prior ignorance.

12. Because the Court already has intricate detail of the principles surrounding the plaintiffs' beliefs, it is unnecessary to do so again, the redundancy is likely to tie up Court resources and is to be avoided if possible.

13. P1 and P2 met only just this April 16th, 2025.

14. They are both housed in the level 5 program called "The Road to Recovery".

15. They are separated by only one bunk bed, so they organically developed a dialogue along common interests.

4

16. The conversation evolved to encompass two topics that dwarfed all others: exercize techniques and religious views.

17. Finding an exact match to a personal religious development was surreal for both P1 & P2, but the excited joy in a found brother was quickly tempered when the length of time was seen as a slight discrepancy for how long P1 had developed the worship and that he had the benefit of winning the Senato case that permitted him to eat Kosher.

18. P1 told P2 that he would assist in getting P2 on the path to proper worship when P1 went to speak to the Chaplain.

19. P.1 spoke to Chaplain Russell and Officer Tate and informed them about P2, and his struggles. P1 told defendants that the Court had decided this issue already and that DDOC policy had in fact been changed on April 6, 2016. (DOC new policy allows non-jewish

5

inmates to receive kosher meals as long as they hold a sincere religious belief).

20. Defendant Tate asked Pl if Pl was getting the kosher trays now, to which Pl said "yes".

21. Tate said that if Pl won, then he should leave it alone or Pl could have them taken away from him too.

22. Pl told Tate that what he just did was threaten to retaliate against him for proselyting to P2 which is also a First Amendment Free Exercize violation.

23. Tate said that Pl was "lucky to be getting the jewish people's food, we're not about to let you bring all your friends too, now go sit down I'm busy."

24. Pl and P2 had been attempting to follow DDOC policy 5.3, in which it states that an inmate seeking a religious diet must self-report a religious faith, complete and sign a Religious Diet Participation Agreement, have

6

it signed by security staff, and submit it. The inmate would then receive the diet in 24 to 48 hours.

25. Here, P1 told P2 all of the interaction with officer Tate. P2 then sent an in house request to the Chaplain in order to attempt to circumvent officer Tate's obstructions.

26. P2 was called down to the chapel to meet for his kosher diet request.

27. When P2 arrived at the chapel, Tate was there and informed P2 that he would not be getting the form, and he would never receive the kosher diet while he was in SCI.

28. P2 tried to reason with Tate and basically begged Tate to reconsider because P2 believes that his soul is soiled.

29. Officer Tate stood his ground, saying

7

That the kosher meals are for orthodox jewish inmates only, and that P1 (parkell) wasn't going to trick anyone at SCI.

30. P2 (cox) again tried to request kosher, seeing the form in Tate's hand. Tate responded to P2, saying "I'm only going to approve you for vegetarian, unless you become orthodox jewish".

31. The SCI compound has seven separate and distinct buildings that house inmates according to their classification status.

32. The two named Plaintiff's housing unit is the STAN TAYLOR building. No other access exists for either plaintiff to receive the religious diet form.

33. Defendants are aware of the limitations, and due to a culturally poisoned atmosphere, no one is capable of having any legitimate issues that are a proximate cause of officers' indifferences, or abuses.

8

## CAUSES OF ACTION

34. Defendant Tate violated the plaintiff's rights to be able to express their chosen religions by intentionally preventing plaintiff 2 from completing the religious diet agreement form violating the First and 5th Amendments of the US Constitution

35. Tate violated First and Fifth Amendments by preventing the plaintiffs access to proselyting others because he won't allow anyone other than Orthodox jews to receive the Kosher diet, even though he was told multiple times that eating kosher is a fundamental aspect to the plaintiff's religion.

36. Tate violated First, Fifth, and Eighth Amendment protections by retaliating against the plaintiff for winning the religious diet case in Delaware (Parkell v. Senato 14-446-LPS). Tate's actions and statements denying P2 the kosher diet, describing the Constitutional Correction as a "trick" and that he wouldn't "allow (you) P1 to bring all your friends too".

37. Tate violated First, Fifth and Eighth Amendment protections by denying access to the religious diet participation form.

9

38. Defendant Taylor violated the plaintiff's First, Fifth and Eighth Amendment rights, when he failed to train the wardens of the level 5 facilities in Delaware to fully understand policy 5.3 after the DDOC was settled with Parkell in previous complaint; Parkell v. Senato, 14-446-LPS. Taylor had a duty to establish a law of the case doctrine as it had shown in docket, that the application of improper policy had a possibility of improper implementation by uninformed staff at James T. Vaughn Correctional Center. It only made the reoccurrence a foreseeable and thereby preventable one. However, in the DDOC, "foreseeable and preventable" are not synonymous with action. The only real direction DDOC takes towards fixing constitutional violations is when forced to. An easily preventable injury such as the described is simply not capable of preemptive action in DDOC because DDOC does not care. They have fought for the right to strip search men three times per day, the same men, for years without end, solely for the purpose of degradation and abuse.

39. Defendant Ceresini violated the plaintiff's First, Fifth and Eighth Amendment rights by failing to instruct his corrections staff, especially Pate, to understand the kosher diet policy 5.3 and properly follow it.

40. Defendant Russell violated the First Amendment by failing to permit proselyting or a kosher diet to P2, or his religion.

41. Each defendant has depended on the DDOC to instruct them on proper implementation of policy, but the DDOC doesn't care. The DDOC prefers to sit back and never change, while policies are literally ruled unconstitutional, and still they prefer to never change.

42. The plaintiffs are more than willing to negotiate settlement for these violations if the DDOC is as well, with no guarantee that this will remain as there is really no need to settle, as the defendants are just about as maliciously indifferent and uncaring towards basic Court principles as is possible. The question is simply "when will they ever care."

## RELIEF

43. The plaintiffs are willing to negotiate settlement and forgo the request to certify a class on one condition: that the offer is accepted immediately and is not retaliated against.

44. The plaintiffs will settle right now if the DDOC chooses to do so. Otherwise the expense will likely be great for DDOC, as there is a costly length of litigation, and an untenable one for a DOC that has disregarded the settlement terms of previous agreement.

45. THE TERMS WILL CONSIST OF:-
  A. Plaintiff 1 (Parkell) receives an immediate sum of $85,000.00;
  B. Plaintiff 2 (Cox) receives an immediate sum of $40,000.00; and the DDOC Kosher diet with a guarantee of uninterrupted delivery.

46. This offer in nonnegotiable.

I, Donald Parkell, certify and verify that everything written within this complaint is true and correct under full penalty of perjury.

Respectfully Submitted,
Donald Parkell
500 PO Box
Georgetown, De, 19947
MAY 13th 2025

12